## ELWOOD vs. KLOCK.

The conveyance of a married woman can only become operative, upon her acknowledgment of the execution thereof, on a private examination before a proper officer, duly certified by him. And her acknowledgment, before an officer, of the execution of a deed, by her, cannot be established by parol.

Accordingly, *held*, that where a certificate of acknowledgment of the execution of a deed by a married woman was defective, such acknowledgment could not be proved by examining the officer as a witness, after his term of office had expired.

A deed cannot be recorded, upon parol proof of its proper acknowledgment; neither can the estate of a married woman pass, by her conveyance, upon parol evidence of her acknowledgment of the execution. Without a proper *certificate* of her acknowledgment, her deed cannot take effect for any purpose.

In the revision of statutes, a change in the language does not necessarily imply a change in the statutes revised.

The rule that *dos de dote pete non debet*, is only applied when dower is actually assigned. If no dower is assigned to the widow of the person first seised, the principle is not applicable.

The widow of the person first seised, must be actually endowed, in order to restrict the widow of the person last seised to dower of the remainder of the estate.

And if the widow of the first tenant *releases* her dower, before the same has been assigned to her, her release will operate, not as an assignment of dower to the widow, nor as a conveyance of it to the grantee, but as an extinguishment of her right of dower. Such release will not affect the claim to dower of the widow of a subsequent grantee of the premises.

THE plaintiff brought this action to recover dower, as the widow of Henry Elwood deceased, in certain lands in Herkimer county. The action was referred by stipulation to a sole referee, upon whose report, judgment was perfected in favor of the plaintiff. The defendant derived title under sale upon the foreclosure of a mortgage executed by Henry Elwood, in his lifetime, to Jacob Failing, and assigned by the mortgagee to David and George Elwood, and by them to David H. Little, by whom it was foreclosed ; he becoming the purchaser of the mortgaged premises. The premises were conveyed by Little, to David, George and Peter Elwood, and by them they were conveyed to the defendant. David and George Elwood assigned the mortgage to Little, and covenanted that the mortgagor had a good

title to the premises, and that the mortgage was the oldest incumbrance, and that it was collectable. After the assignment to Little, and before the foreclosure, the plaintiff—her husband being still living—executed to David and George Elwood, a quitclaim deed of the premises, the certificate of acknowledgment to which, was defective. Upon the trial before the referee, the commissioner before whom the acknowledgment purported to have been made—his term of office having expired several years before—was called as a witness, and testified, under objection, that he took the acknowledgment of the execution of the deed on a private examination, apart from her husband; and that she acknowledged that she executed the said deed freely and without any fear or compulsion of her husband. The case also showed that one Ann Joyce, the widow of James Joyce, who had owned about 80 acres of the premises prior to Elwood, was still living, and was entitled to dower in that 80 acres. That after the death of her husband Mrs. Joyce brought an action to recover her dower, and in consideration of $125 paid to her, released to the defendant her dower in the 80 acres. The referee found that the plaintiff was entitled to dower in the whole premises; and the defendant appealed from the judgment founded upon the report.

*L. Ford*, for the plaintiff.

*H. Denio*, for the defendant.

*By the Court*, W. F. ALLEN, J. It was not claimed upon the argument, that effect should be given to the certificate of the acknowledgment of the deed from the plaintiff to David and George Elwood. It was conceded that the original certificate was clearly defective, and insufficient to authorize the reading of the deed in evidence without further proof, and that the amendment of the certificate by the commissioner, several years after his term of office had expired, was a nullity. The only question, therefore, upon this branch of the case, is whether the due acknowledgment of the execution of the deed by the plaintiff—a

feme covert—could be established by parol. In this state, as well while it was under a colonial government as since, femes covert have conveyed land by deed and not by fine. The conveyance by deed took the place of the common law mode of conveyance by fine, which is said to be a feoffment of record, or an acknowledgment of a feoffment of record; and if a feme covert was a party to it she was to be privately examined whether she did it willingly and freely, or by compulsion of her husband. (2 *Black. Com.* 351.) "The record of the fine is evidence of the private examination of the married woman, and cannot be contradicted; for that were to lessen the credit of the judgments of the courts of justice, which is the highest evidence of the law." (*Bac. Abr. Fines and Recov. C.*) The only acknowledgment of the act of a married woman, to bind her, recognized at common law, is one made upon a private examination; and the record of a fine to which she is a party is held to import, incontrovertibly, such an examination. Parol evidence would not be received to impeach the record, and would be inadmissible to support it. It is said that the conveyance of lands by femes covert, under the government of the colony of New-York was by deed, and upon the simple acknowledgment of the wife before a competent officer, without a private examination. (2 *Kent's Com.* 151.) These conveyances were confirmed by the act of February 16, 1771. Chief Justice Thompson, in *Jackson* v. *Gilchrist*, (15 *John.* 89,) appears to suppose that this act was designed rather to cure defects in the certificate of the officer than to apply to cases where in truth there had been no private examination. He says at page 111, "Nor are we to conclude that because the certificate does not state a private examination of the wife, that no such examination took place. After such a lapse of time this might and ought to be presumed; especially as there was no statute in any manner prescribing the form of the certificate." * * "It is not necessarily to be inferred from this provision, that it applied to cases where no private examination had in fact been made. The act was intended to confirm ancient conveyances, and to prevent the want of evidence of a private examination being set up to avoid the deed, presuming the evi-

dence of the fact to be lost by the lapse of time. Had it been intended to make good a deed when no private examination at all had taken place, it would probably have been so declared in terms." A private examination of a married woman has always, it would seem, been deemed necessary, and that the evidence thereof should appear by the certificate of the officer before whom the acknowledgment was made. In analogy to the proceedings by fine, in which the record of the acknowledgment was conclusive evidence of the private examination, it was doubtless supposed that the certificate of the officer, of the acknowledgment, would be evidence that every thing had been done necessary to make the acknowledgment operative. The official certificate took the place of the record. It may be for these reasons that the earliest legal provisions upon the subject did not prescribe the form of the certificate. By an act passed by the governor, council and representatives of the province of New-York, October 30, 1683, it was provided " That no estate of a feme covert shall be sold or conveyed butt by deed acknowledged by her in some court of record, the woman being secretly examined if shee doth itt freely without threats or compulsion from her husband." (2 *R. L. App. p.* 3.) The record of the acknowledgment would doubtless under this act be evidence of the secret examination, as in the record of a fine, although nothing was said of it in such record. At the same session of the legislature provision was made for recording of deeds, provided they were acknowledged before one of his majesty's justices of the peace and a certificate thereof entered on the back side thereof. The form of the certificate was not prescribed. There is no evidence in the legislation of the country prior to 1771 that the statutory or customary proof of the acknowledgment of a conveyance by a feme covert should not import or expressly show that it was made upon a private examination. The act of 1771 (3 *R. S. App.* 22) provides for the confirmation of prior conveyances when such evidence was wanting, and that thereafter no estate of a feme covert should pass by her deed without a previous acknowledgment made by her, apart from her husband, and a certificate thereof purporting that she had been privately examined, indorsed

on the deed and signed by the officer before whom the acknowl-edgment was made.   The same provision was re-enacted in 1788, (3 *R. S. App.* 26,) and again in 1801; (*Id.* 30;) and again in 1813. (1 *R. L.* 369.)   In each of the acts referred to, the certifi-cate of the officer that the acknowledgment of the execution of the conveyance was made upon a private examination of the wife, apart from her husband, was made essential to the operation of the deed.   Without this certificate no estate of a feme covert could pass by deed.   The law required not only the private ex-amination, but it also required the certificate of the fact to be made at the time, and as a part of the transaction, and the fact could not, under these statutes, be made to appear except by the certificate.   The certificate took the place of the record of the examination in open court, and performed the same office. (*See Elliott* v. *Pierson*, 1 *Peters*, 328.)   In the revision of the laws in 1830, the same provision was substantially re-enacted. The language employed is slightly different, and the provision in relation to a certificate is placed in a section by itself.   It is provided, 1. That no estate of a married woman shall pass by any conveyance not acknowledged as required by the act; and 2. That the officer who shall take such acknowledgment shall indorse a certificate thereof, signed by himself, on the convey-ance, and in such certificate shall set forth the matters therein before required to be done.   (1 *R. S.* 758, §§ 10, 15.)   The stat-ute still looks to the certificate as containing the evidence that its requirements have been complied with, to enable the deed to become operative.   The execution of a deed by one not under disabilities may be operative to pass an estate, without an ac-knowledgment, and the execution may be proved by any compe-tent evidence.   Not so of a deed of a feme covert.   No estate passes except the conveyance is acknowledged as required by law.   The disabilities of the wife are only removed by a strict compliance with the statute.   As no deed can be recorded ex-cept upon a proper certificate of acknowledgment, a deed of a feme covert cannot take effect for any purpose except upon a like certificate.   A deed cannot be recorded upon parol proof of its proper acknowledgment; neither can the estate of a married

woman pass by parol evidence of an acknowledgment of the execution. If the acknowledgment can be established by the examination of the officer as a witness, years after the transaction, it may be established by the testimony of any other credible witness who may have knowledge of it, and perhaps by the admission of the wife herself to a third person that the requirements of the statute had been complied with; thus substituting parol evidence, or a verbal admission, for the solemn and formal written evidence required by statute. There is no evidence that the revisers or the legislature designed to change the effect of the former statutes upon this subject. The change in the language does not necessarily imply a change in the statutes revised. (*Croswell* v. *Crane,* 7 *Barb.* 191, *and cases cited at p.* 195.) I think that a conveyance of a married woman can only become operative upon her private examination before a proper officer, duly certified by him, and that it cannot be established by parol. (*See* 2 *Cowen & Hill's Notes,* 1*st ed.* 1247, *note* 874.) A deed duly acknowledged may be read in evidence upon the certificate of the acknowledgment, without further evidence of its execution; but I apprehend that if the certificate omitted to state some essential fact—as for instance that the officer knew the grantor, or the subscribing witness if the execution was proved by him—it could not be helped out by evidence of the fact omitted, so as to entitle the deed to be read in virtue of the certificate thus fortified. The acknowledgment is a nullity unless properly certified.

The plaintiff is not therefore barred of her dower by the deed to David and George Elwood; and the only remaining question is as to the extent of her right. The plaintiff claims to be entitled to dower in the whole premises, while the defendant insists that she is not entitled to be endowed of the 80 acres in which Mrs. Joyce was entitled to dower, upon the principle that *dos de dote pete non debet.* Dower cannot be recovered upon dower, and this maxim is laid down by all the elementary writers treating upon the subject, and is well settled upon authority. (*Reeve's Dom. Rel.* 58. 4 *Kent's Com.* 64. *Bac. Ab. Dower and Jointure, E. Dunham* v. *Osborn,* 1 *Paige,* 634. *Rey-*

_nolds_ v. _Reynolds_, 5 _Id._ 161.　_Safford_ v. _Safford_, 7 _Id._ 259. _Bear_ v. _Snyder_, 11 _Wend._ 592.) The cases cited from Paige were cases in partition, in which all the parties, including the widows entitled to dower, were before the court, each insisting upon her claim for dower; so that the question did not arise whether dower must be actually assigned, in order to bring the case within the maxim of _dos de dote._ The language of the chancellor would seem to intimate that the widow of the person first seised must be actually endowed, in order to restrict the widow of the person last seised to dower of the remainder of the estate. His language is at all events quite consistent with this application of the rule. In _Bear_ v. _Snyder_, which was ejectment for dower, the widow of the first owner had been endowed, and her dower had been already assigned to her. The question arose in _Hitchins_ v. _Hitchins_, (2 _Vern._ 403,) and it was there adjudged that the widow of a person first siesed not having received her dower, that was to be laid out of the case; and that the plaintiff's dower, (she being the widow of a subsequent owner,) was not to be looked upon as _dos de dote._ The plaintiff in that case recovered dower of the entire premises. This case is cited as authority by Cruise, and he says, " The rule of _dos de dote_ is only applied when dower is actually assigned: if no dower be assigned, it does not take place." (_Cruise's Dig. tit._ 6, _Dower_, _ch._ 3, §§ 22, 23.) The widow has no estate in the premises until actual assignment of dower. It is a mere chose or right in action. (4 _Kent's Com._ 61.)

The release of Mrs. Joyce to the defendant, of her dower in the eighty acres, is claimed to be equivalent, for all the purposes of this defense, to an actual assignment of the dower. It cannot be said to be a conveyance of an equitable estate or interest in the premises, which might be prevented from merging in the legal title, to promote equity. The right to dower is a legal right, whether it remains in action, or has been reduced to possession. The transaction between Mrs. Joyce and the defendant was an extinguishment of her right of dower, not an assignment of it to the widow, or a conveyance of it to the defendant. The widow released to the defendant her right, it then being a right

in action, simply. Had she released her right while it was yet contingent, during the lifetime of her husband, upon a consideration paid by the defendant, it would not have interfered with the claim of the plaintiff in this action. There is no difference, in principle or in effect, upon the rights of others, whether the wife releases her dower by uniting with her husband in a conveyance, or by a subsequent release either before or after she becomes a widow. In either case the grantee is presumed to pay a consideration for this release. So long as dower has not been actually assigned, the claim of a widow of a subsequent grantee, to dower, will not be affected.

The judgment must be affirmed.

[Oswego General Term, April 5, 1852. *W. F. Allen, Hubbard* and *Pratt*, Justices.]