JOHN G. JENKINS, Appellant, *v.* MICHAEL FAHEY, Respondent.

The fact that at the time of the commencement of an action against a purchaser, to enforce specific performance by him of a contract for the sale of lands, the vendor could not make a good title is immaterial, except upon the question of interest, and will not affect a judgment in his favor if he can make such title at the time of the decree.

Tenants for life, in possession, may have partition as between themselves, and all persons entitled to the reversion or remainder; and all who may be or who may become entitled to any beneficial interest in the lands, may be made parties to the action or proceedings.

A judgment in partition is conclusive on all having any interest who are made parties, and conveyances upon sale under the judgment are a bar in law and equity as against all such parties or their representatives. (2 R. S., 318, §§ 5, 6; id., 322, § 35; id., 327, § 60.)

Where service of a summons by publication upon a non-resident defendant is ordered, a personal service out of the State is equally valid to give jurisdiction as if service had been made by publication and deposit in the post-office. (Code, § 135.)

In an action for partition by one of several tenants for life, a sole owner of the estate in remainder, who was a non-resident, was made a party defendant, an order for service upon him by publication was obtained; the summons and complaint were served upon him personally out of the State; he did not appear and judgment was perfected, adjudging that the premises be sold, and charging the estate in remainder with the payment of a portion of certain taxes and assessments, *held*, that the court had jurisdiction, and the judgment was conclusive, as against the remainderman, in favor of the purchaser at the sale under

the judgment; and that in an action brought by said purchaser against one who had contracted to purchase a portion of the premises, for specific performance of the contract, the defendant could not be heard in impeachment of the judgment.

Under the statute authorizing the sale of the real estate of an infant (2 R. S., 194, §.70), the court has jurisdiction to direct the sale of a remainder in fee, vested in interest in an infant; the term "real estate," as used in the statute, includes every freehold estate and interest in lands; and where there is a vested remainder in fee there is a seizin in law, which answers the requirement of the statute that the infant shall be "seized" of the estate.

*Jenkins* v. *Fahey* (11 Hun, 351), reversed.

(Argued April 8, 1878; decided April 16, 1878.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of defendant, entered upon the report of a referee. (Reported below, 11 Hun, 351.)

This action was brought to compel the specific performance of a contract between plaintiff, as vendor, and defendant, as vendee, for the sale of certain real estate.

The referee found substantially the following facts:

The plaintiff made an agreement in writing with the defendant to sell and convey to the latter, who agreed to purchase two lots of land in the city of Brooklyn; plaintiff tendered a deed of conveyance for the same in execution of the agreement; the defendant refused to accept, by reason of certain objections to the title.

Francis Titus died seized of a farm which included these lots, in the year 1836, leaving a will which contained the following provision:

"First. After all my lawful debts and demands and funeral expenses are paid and satisfied, which I direct to be done in due season by my executors hereinafter named, I do give and bequeath unto my daughter Cornelia all my estate, personal and real, except the following sums." Then, after giving some legacies to relatives, the will proceeds as follows: "All my remaining property, dwelling-house, lands, out-houses, furniture, moneys, moveables, etc., I give, devise and bequeath to my daughter Cornelia for her support and com-

fort, to be held and controlled by her, and at her death to pass to her heirs ; or if she leaves no heirs, to be disposed of by her will to whom and for what purposes she may deem right and proper."

This will received a judicial construction in the case of *Taggart* v. *Murray* (53 N. Y., 233).

Before 1847, Cornelia Titus, the daughter mentioned, married Simon Phelps, by whom she had three children, all of whom are living. In 1847 Cornelia and her husband conveyed these lots to James Waterbury, and subsequently the same title came to William Laytin, Lawrence and Julia Waterbury. In 1861 John F. Phelps and Maria Louisa Phelps, two of the children of Cornelia, executed quit-claim deeds of conveyance for these lots with others to Alvah C. Bush, reciting therein that they were intended to grant all their right, title and interest, conditional, contingent, in remainder, or otherwise, in and to the lands of which Francis Titus died seized. In the same year the estate of Ida C. Phelps, the other child of Cornelia, then an infant, in pursuance of proceedings under the statute providing for the sale of the real estate of infants, was conveyed to Mr. Bush, the same grantee. In 1874 William Laytin brought an action for a partition of these and the other lots, in which he made Bush and the Waterburys defendants. Bush was a non-resident of the State, and an order was obtained in the action for the service of the summons on him by publication, and he was served personally out of the State, at his place of residence in Pennsylvania, but did not appear in the action. The cause proceeded to judgment, which was in substance that partition be had by sale of the premises ; that out of the proceeds certain sums paid by the tenants for life for taxes and assessments be refunded, and that the balance be divided in certain specified proportions. Under the judgment the premises in question were sold to the plaintiff, who received the referee's deed therefor. During the pendency of the action the testator's daughter Cornelia died. The lots in question were sold in

1838, for an unpaid assessment for a street improvement ; the purchaser never entered into possession, or exercised or claimed to exercise any acts of ownership.

Further facts appear in the opinion.

*John W. Stearns*, for appellant. Mrs. Phelps was, by her deeds, estopped from executing the appointment under the will otherwise than for the benefit of her grantees. (*Mead* v. *Mitchell*, 17 N. Y., 210; *Bebee* v. *Griffing*, 14 id., 235; *Sullivan* v. *Sullivan*, 66 id., 37.)

*Theo. F. Jackson*, for respondent. The Supreme Court in the partition suit of *Laytin* v. *Waterbury* did not have or acquire jurisdiction to decree a partition or sale of the interest of Alvah C. Bush. (Allnatt on Partition, 63; *Cole* v. *Aylott*, Litt., 300; 2 Broom & Had. Coms., 71; *Coles* v. *Coles*, 15 J. R., 319; *Bradshaw* v. *Callaghan*, 5 id., 80; 8 id., 558; *Clapp* v. *Bromaghan*, 9 Cow., 530; *Fleet* v. *Dorland*, 11 How. Pr., 489.) The sale of the interest of the infant in the real estate was void, for the reason that the Supreme Court had not jurisdiction to order it. (*Rogers* v. *Dill*, 6 Hill, 415; 1 Washb. on R. P., 34, 35; *Durando* v. *Durando*, 23 N. Y., 332; 2 Black's Com., 17, 19; 1 Broom & Had. Com. [Am. ed.], 430.)

ALLEN, J. During the pendency of this action the life upon which the particular estates depended has fallen in, and the estate in remainder has become vested in possession, and one serious if not fatal objection to the plaintiff's title, which existed at the time of the commencement of the action, is removed. The remainder in the estate was devised to the issue of the daughter of the testator, the devisee for life living at her death. (*Taggart* v. *Murray*, 53 N. Y., 233.) The plaintiff claims, and, if the conveyances to him are valid and effectual for the purposes for which they were made, has acquired, the title of the three children and only issue of the devisee for life, then or now living; but he has only acquired

the title and interest as devisee in remainder which they respectively had at the time of the several conveyances, and by the death of either, without leaving issue during the life of the mother, the estate and interest which he or she would have taken absolutely at the death of the mother, would have become vested in such of the issue as should survive the mother. It follows that during the continuance of the life estate the plaintiff had not a marketable title to the remainder, and could not have made "a good and perfect title in fee simple absolute" to the lands. But the children have survived the mother, and their estates have come into possession. The plaintiff has a title in fee, if the conveyances under which he claims the estate are valid. The fact that at the time of the commencement of the action he could not make a good title is immaterial, except upon the question of interest, if he can make such title at the time of the decree. (*Pierce* v. *Nichols*, 1 Paige, 244; *Brown* v. *Haff*, 5 id., 235.)

The first objection to the title, which is urged upon this appeal, is to the jurisdiction of the court to decree a partition or sale of the estate in remainder, then in Bush, the plaintiff taking title under the sale in the action for a partition or sale, brought by Laytin, a tenant for life in possession, against his co-life tenants and Bush the remainderman. Whether the judgment was such a judgment as ought to have been given, or whether the action, whether regarded solely as an action for a partition, or as an action as well to establish a lien for taxes and assessments paid by the life-tenants, might not have been successfully defended by Bush, the remainderman, and the judgment in partition restricted to the life estate need not be considered. If the court had jurisdiction of the subject-matter and of the persons, the judgment is conclusive, although it may have been erroneous, until reversed or vacated. The court acquired jurisdiction of the defendants, other than Bush and wife, by the personal service of summons and complaint and their voluntary appearance and consent to the judgment. Jurisdiction

was acquired over Bush and wife by service of summons and complaint upon them, pursuant to an order of publication, at Tioga, in the State of Pennsylvania. The service was equally valid for the purpose of giving jurisdiction, whether made upon them personally at their residence in Pennsylvania or by publication. (2 R. S., 319, § 12; Code, § 135.) The Supreme Court has jurisdiction in cases of partition as a proceeding *quasi in rem*—that is, it had jurisdiction over the general subject-matter of the action. It is not denied that tenants for life can have partition as between themselves, and in all cases of partition all persons entitled to the reversion, remainder and inheritance, after the termination of any particular estate, and every person who, by any contingency contained in any devise, grant or otherwise, may be or become entitled to any beneficial interest in the lands, may be made parties to the action or proceedings, and the judgment in partition is made conclusive on all parties having any interest in the premises, contingent or otherwise, and conveyances upon a sale under a judgment in partition are a bar in law and equity against all persons interested in such premises, in any way, who are named as parties in the proceedings. (2 R. S., 318, §§ 5, 6; 2 id., 322, § 35; 2 id.; 327, § 60; *Sullivan* v. *Sullivan*, 66 N. Y., 37.) Bush was a proper party to the action and might have appeared and resisted the demand for judgment that his estate be sold, and insisted that the partition should be confined to the life estate. There could have been no partition of the estate in remainder, as Bush was the sole owner of such estate, if the plaintiff's claim is to be upheld, and actual partition could easily have been made between the life tenants, as it was in fact made upon the sale of the lots separately, and striking off seven of the fourteen lots to one purchaser, and the residue to another.

Whether the estate in remainder was properly chargeable with the payment of any part of the taxes and assessments, and if so, what proportion we are not called upon to consider. The Supreme Court had jurisdiction of that

subject, as well as of the partition. An equitable lien was asserted in the complaint, and the judgment is conclusive, as in the case of partition. (*Howell* v. *Mills*, 56 N. Y., 226; *Sullivan* v. *Sullivan* (*supra*). The objections to the judgment do not go to the jurisdiction of the court, but are merely assignments of error, and cannot be heard in this action or any collateral proceeding in impeachment of the judgment, or to impair its effect as the judgment of a court of competent jurisdiction, conclusive on all the parties to it and their representatives.

The next objection is to the jurisdiction of the Supreme Court to direct a sale of the estate in remainder of the infant, Ida C. Phelps, under the statute for the sale of infants' estates, the title of Bush to an undivided third of the remainder having been acquired under a sale pursuant to such order. The contention is, that under the statute, the court has only jurisdiction over estates in possession, and cannot direct a sale of future estates, although vested in interest. The court derives its power over the real estate of infants solely from the statute, and can only exercise it in the cases prescribed. (*Rogers* v. *Dill*, 6 Hill, 415.) Prior to the passage of the first statute on the subject in 1814, application was made to the Legislature, as individual cases arose, for the disposal of infants' estates, and the objection now taken to the proceedings for sale of the estate of the infant Phelps is founded upon the language of the statute. The first act (Laws of 1814) authorized the sale of "the real estate" of infants. In 1815, a revised and more perfect act was passed, authorizing applications for a sale " whenever an infant shall be seized of lands or tenements, or be entitled to a term to come in any lands in this State." (Laws of 1815, ch. 106.) And, by the Revised Statutes (2 R. S., 194, § 170), any infant " seized of any real estate, or entitled to any terms for years in any land may " apply for sale or disposition of his property. Although the language of the several statutes differs slightly in phraseology in describing and characterizing the property subject to the provisions of the act, there is no reason to sup-

pose that any difference in substance was intended. The same description of property — that is, the same estate and interest of the infant in lands, was intended in the several acts. A difference in the phraseology or verbiage of a statute in a revision does not necessarily call for a different construction, or import a change in the law. (*Taylor* v. *Delancey*, 2 C. C. in E., 143; *Elwood* v. *Klock*, 13 Barb., 50; *Theriat* v. *Hart*, 2 Hill, 380.)

The term "real estate," used in the statute of 1814, and in the Revised Statutes, includes every freehold estate and interest in lands — that is, an estate in fee or for life. By 1 Revised Statutes, 754, section 27, it is declared to include every estate, interest and right, legal and equitable, in lands, tenements and hereditaments, except such as are determined or extinguished by the death of an intestate seized or possessed thereof, or in any manner entitled thereto, and except leases for years and estates for the life of another person. This is but an elaboration of the common law definition of the term. (3 Kent Com., 401; *Merry* v. *Hallet*, 2 Cow., 497.)

A remainder in fee in lands is clearly "real estate," as that term is used at common law, as well as defined by the statutes of this State, and the object was to authorize the sale of every and all estates and interests in lands belonging to infants, freehold interests being included in the term real estate, of which the infant is seized, and chattel interests under the designation of terms for years. Every present estate of freehold is capable of a seizin, either in deed or law.

The only question then is, and upon that the judgment of the court below was adverse to the plaintiff, whether an estate in remainder, although "real estate," is an estate of which an infant can be seized. Seizin denotes, ordinarily, a possession in fact by one having or claiming a freehold interest, which is known as a seizin in deed, or a right of immediate possession, which is a seizin in law. There may be a constructive seizin, the equivalent of a seizin in deed. (Com. Dig., Seizin A., 1, 2 ; per Ld. MANSFIELD, *Taylor* v. *Horde*, 1 Bur. 60, 107; Coke Lit., 17 *a;* 4 Kent Com., 386, *note*;

*Green* v. *Liter*, 8 Cranch; S. C., 229.) It is quite evident that a remainderman, when the particular estate, as in this case, is a freehold, is not seized within this limited definition of the term, for he is not in possession, and has no right of possession. He cannot enter either to take the profits or to make livery of seizin to another. One who has a reversion or remainder in fee expectant upon the determination of a term for years is in the actual seizin of his estate, for the possession of the termor is, in law, that of the remainderman or reversioner. But this does not apply when the particular estate is an estate of freehold, but there may be in the later case a seizin in law which answers the call of the statute under which the proceedings under consideration were had, resting upon a different principle.

A right of present enjoyment of an estate, or an actual possession either by a termor or otherwise, is not necessary to a seizin when there is a fixed vested right of future enjoyment, that is, when there is a vested remainder or reversion. In such a case there is a seizin in law, all the possession of which the nature of the estate is susceptible. In Plowden, 191, it was held that when a reversion is dependent on an estate for life, the reversioner in pleading may state that he is seized of the reversion. The statutes of this State give a right of action for waste to "a person seized of an estate in remainder or reversion," and thus describes the remainderman as one "seized" of the estate. (1 R. S., 1750, § 8.) When the particular estate and the remainder in fee are created at one and the same time, and by one and the same act, if the particular estate is a freehold or one for life, the seizin as well as the possession passes to and stops in the tenant of the freehold, but in such case it is said the livery made to the tenant of the freehold enures to the benefit of the reversion or remainder and passes to the reversioner or remainderman instantaneously upon the determination of the particular estate. The act of livery of seizin is due to the one who takes the first estate with right of possession. One is "seized" of an estate in remainder when the

estate is vested. (*Cook* v. *Hammond,* 4 Mason, 467; 2 Bl. Com., 166; 1 Wash. on Real Prop., 38, 47; 4 Kent Com., 386.) Remainders and reversions being future interests, there can be no seizin in deed of those, only a seizin in law until they come into possession, but there is a seizin in law which is all that is required. (Crabbe's Law of Real Property, 1001.) But we are relieved from an extended consideration of this question by the construction of the courts of this State of the same language in another statute, in which the question has been thoroughly treated by learned judges. It was held that the statute to abolish entails, by converting the estates of all persons " seized in fee tail of any lands," etc., into a fee simple, operated upon vested remainders in tail as upon estates tail which had taken effect in possession. (*Vanderheyden* v. *Crandall,* 2 Den., 9; *Van Rensselaer* v. *Poucher,* 5 id., 35; *Wendell* v. *Crandall,* 1 Comst., 491.) All that is said by judge BRONSON in the latter case in respect to the policy of the law for the destruction of entails, and showing that there was the same reason for attacking a future estate tail as an estate tail already in possession is equally applicable to the case in hand. There is the same reason for subjecting estates of infants in remainder or reversion to the jurisdiction of the court, and authorizing a sale when the interests or necessities of the infant require or make a sale expedient as estates in actual possession. The reasoning of judge BRONSON does not derogate from the force of the arguments in the other cases, or the bearing or weight of the authorities cited in support of the results, but rather gives support to them. Judge BRONSON adopts in his language the same idea of seizin as was adopted in those cases, and refers to a remainderman as one seized in law of his estate.

The court had jurisdiction to order the sale of the estate in remainder of the infant Phelps, so that the title of Bush to the entire remainder was perfect. The learned counsel waives the only other objection to the title on the ground of the sale of the lands in question, by the village of Williamsburgh in 1838, for the non-payment of an assessment for

opening and regulating North Eighth street in that village, and concedes that *Sharp* v. *Johnson*, 4 Hill, 92; *Hassan* v. *City of Rochester*, 67 N. Y., 533; *Fisher* v. *Mayor of New York*, id., 73, are decisive that such sale does not constitute an objection to the title.

The judgment must be reversed, and a new trial granted. All concur.

Judgment reversed.