## SUPREME COURT.

WILLIAM H. ONDERDONK, as sole surviving executor of the last will, &c., of ELIZA MOTT, deceased, and also of the last will, &c., of MARIA M. HOBBY, deceased, agt. WARREN ACKERMAN.

*Will — Construction of — Authority of executor under the will to sell and convey real estate — Specific performance.*

The plaintiff, as vendor, sues for the specific performance of a contract by defendant for the purchase of real estate sold by plaintiff, as executor of the two estates of Eliza and Maria, daughters of Henry Mott. By Henry Mott's will, his estate, real and personal, was vested in trustees. In distinct clauses, he directed them to " stand seized and possessed of one-third part thereof," upon trust for the use of each of three daughters, " during her natural life," and if she " shall be single and unmarried at her death," then "upon such trust, and for such purposes as she shall or may appoint by her last will." The daughters died without issue, and each were single at her death. Maria, the last survivor, was a widow, and neither of the others had ever married. Eliza and Maria each left a will giving a power of sale to her executors.

*Held*, that plaintiff, as surviving executor of Eliza and Maria, respectively, had authority to sell this real estate, and by his deed as executor to convey a good title to the purchaser.

*Special Term, November*, 1881.

*James Emott*, for plaintiff.

*Isaac L. Miller* and *J. Hervy Ackerman*, for defendant.

LAWRENCE, *J.* — The objections to the title to the property involved in this action, so far as they relate to or arise under the will of Henry Mott, cannot, in my opinion, be sustained.

The power given to each of the daughters of Henry Mott by his will was not a power to create another trust, but a power to dispose absolutely of the fee of the third part, to the interest and income of which each daughter was entitled

during her lifetime, under the trusts created by his will, and neither of the daughters having had issue, each of them could, under the terms of Henry Mott's will, transfer to her appointee or appointees a good and absolute title to the one-third part of her father's estate in which she was interested. Nor can it be fairly contended that the will of Esther W. Mott was not an execution of the power of disposition vested in her by the terms of the will of Henry Mott.

The Revised Statutes provide that "lands embraced in a power to devise shall pass by a will purporting to convey all the real property of the testator, unless the intent, that the will shall not operate as an execution of the power, shall appear, expressly or by necessary implication" (2 *R. S.* [*6th ed.*], 1118, *sec.* 126.)

By reference to the will of Esther W. Mott, it will be seen that the intention of the testatrix was to dispose, after paying all her just debts, &c., " of all the rest, residue and remainder of my (her) estate, both real and personal, of every nature whatsoever and wheresoever."

It would not be possible to employ language more broad and comprehensive, for the purpose of expressing an intention to dispose of every right, title and interest in real and personal estate of which the testator might be possessed, or with which she might be vested at the time of her decease.

On the face of the will I think it quite apparent that it was intended as an execution of the power vested in Esther W. Mott under her father's will; and even under the law which prevailed prior to the adoption of the Revised Statutes, the will would, I think, have been a valid execution of the power (*See White* agt. *Hicks*, 33 *N. Y.*, 383 ; *Bolton* agt. *De Peyster*, 25 *Barb.*, 564). There does not seem to be any force in the objection that there was an illegal suspension of the power of alienation under the will of Henry Mott or under the wills of either of his three daughters. By the will of Henry, the power of alienation was restricted only during the life of each of his daughters as to the one-third part of

his estate in respect to which such daughter had the power of appointment.

Under the will of Esther, her sisters took an estate which they could absolutely dispose of (2 *Rev. Stat.* [*6th ed.*], 1103, *sec.* 35; 2 *Rev. Stat.* [*6th ed.*], 1104, *sec.* 44). And I find nothing in the wills of Eliza Mott and Maria M. Hobby which suspends the power of alienation for more than two lives in being at the time the wills took effect. I agree with the learned counsel for the plaintiff in the position taken by him in his brief, that after the death of Eliza Mott there were always persons in being by whom a perfect title to her share could have been conveyed.

Maria M. Hobby and the executors, by uniting with Underhill, or his heirs or representatives, could have conveyed a title to which no valid objection could have been taken. The objection, then, that there is an illegal suspension of the power of alienation under any of these wills is untenable. It is claimed, however, that as the power of sale contained in the will of Eliza Mott was not exercised within three years from the proof of the will, it is gone by lapse of time, and that the surviving executor has therefore no authority to sell. An examination of the will of Eliza Mott shows conclusively, to my mind, that a sale of her real estate was necessary to accomplish the purpose which she had in view. I understand it to be conceded that her personal estate was entirely inadequate for the payment of the bequests contained in her will, and the devise to Underhill was expressly made subject to the payment of such bequests. It appears quite obvious, then, that there was an equitable conversion of her real estate into personal estate at the time her will became effectual (*Horton* agt. *McCoy*, 47 *N. Y.*, 21; *Bogert* agt. *Hertell*, 4 *Hill*, 492).

During the lifetime of Mrs. Maria Hobby, the power vested in the executors to sell was dependent on her consent. As that power was not executed during Mrs. Hobby's lifetime, I think the presumption must be that she declined to give such consent. Should the power of sale fail because she withheld

or omitted to give such consent, and it therefore became impossible for the executors to execute the power within three years from the proof of Eliza's will? I think not.

This will is to be construed as a whole, and all the parts are to be made to harmonize, if possible. By putting it in the power of her sister Maria to delay the execution of the power beyond three years from the proof of her will, it is not reasonable to suppose that Eliza intended to defeat the whole scope and frame-work of her will. Such a construction of the will would be, in my opinion, opposed to familiar principles (*Taggart* agt. *Murray*, 53 *N. Y.*, 233, *and cases cited;* *Vernon* agt. *Vernon*, 53 *N. Y.*, 351; *Van Vechten* agt. *Keator*, 63 *N. Y.*, 52; *Kinnier* agt. *Rogers*, 42 *N. Y.*, 531; *Wild* agt. *Bergen*, 16 *Hun*, 127).

With respect to the objection that the heirs of Henry Mott and the heirs of Underhill should have been made parties to this action, I deem it sufficient to say that it does not appear, from the view which I have taken of the case, that the heirs of Henry Mott have any interest in the controversy. And in relation to the heirs of Underhill, it was shown that they had executed releases, which were proven upon the trial and tendered to the defendant. Even then, if this objection ever had any force, it is removed by the execution of the releases, and the rule is well settled that if, at the time of the trial, the vendor can make a good title, he is entitled to a decree of specific performance (*Jenkins* agt. *Fahey*, 73 *N. Y.*, 355; *Pierce* agt. *Nichols*, 1 *Paige*, 244; *Brown* agt. *Haff*, 5 *Paige*, 235). But I do not think that the heirs of Underhill were necessary parties to this action.

If I am correct in the views above expressed there was an equitable conversion of Eliza's estate, and the devise to Underhill was made subject to the payment of the legacies mentioned in her will. His interest in her estate was in the proceeds arising from its sale after the payment of the legacies, and that is the interest which has devolved upon his representatives. The purchaser from the executor assuming the power

of sale to exist is not bound to see that the proceeds of the sale are distributed to the parties entitled to them. It can, therefore, be of no consequence to the defendant in this action whether the representatives of Underhill are before the court or not.

The devise to Underhill by the will of Maria M. Hobby lapsed by his death before her, and as I read the codicil the bequest to him was revoked.

The observations which have been made in respect to the general features of the will of Eliza Mott are equally applicable to the will of her sister Maria; but as the power of sale was executed within three years from the proof of Maria's will, and no question is raised in respect thereto, it is unnecessary to comment further upon the latter's will.

There is nothing in the case of *Jordan* agt. *Poillon* (77 *N. Y.*, 518) which conflicts with the position asserted by the plaintiff in this case. It is conceded that a purchaser has a right to require a good title, and that he will not be compelled to complete his purchase and accept a deed which leaves him to the uncertainty of a doubtful title, or to the hazard of a contest with other parties which will seriously affect the value of the property. I also agree with the plaintiff's counsel that that case does not apply, for the reason that the objections here are all matters of law, and from my investigation of the case, I have come to the determination that the title is not bad, but good, as matter of law. If the objections urged are not good in law they are not objections affecting the validity of the title in any legal sense, and they afford no excuse to the purchaser for refusing to complete his contract. The case of *McCahill* agt. *Hamilton* (20 *Hun*, 388) is inapplicable for the same reasons.

Finally, I am of the opinion that the sale by the plaintiff, under the wills of Eliza Mott and Maria M. Hobby, was a lawful execution of the power vested in him, and that he is entitled to a decree requiring a specific performance of his contract by the defendant. The findings may be settled on three days' notice.