(112 App. Div. 589)

## LIGHTON et al. v. CITY OF SYRACUSE.

(Supreme Court, Appellate Division, Fourth Department. May 2, 1906.)

1. JUDGMENT—CONCLUSIVENESS—PERSONS CONCLUDED.

A judgment in mandamus to compel the mayor and clerk of a city to execute a contract for the purchase of land, pursuant to a resolution of the council directing them to enter into a contract for the purchase of land, is conclusive in specific performance against the city; the mayor and clerk being, under Laws 1885, pp. 40, 41, c. 26, tit. 5, §§ 33–40, and Laws 1898, p. 379, c. 182, § 47, executive officers, charged with the duty of executing the agreement on behalf of the city.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, § 1227.]

2. SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE—CONTRACTS FOR THE CONVEYANCE OF REALTY—ENFORCEMENT BY VENDOR.

The council of a city adopted a resolution directing the mayor and clerk to purchase land for city purposes, the title to be approved by the corporation counsel. The vendor executed a contract in conformity to the resolution, and the court, in mandamus proceedings, directed the mayor and clerk to execute the contract in behalf of the city. The corporation counsel refused to approve the abstract of title tendered. The transaction was fair and free from fraud. Held, that a decree of specific performance would be entered on the vendor tendering good title, though the corporation counsel refused to approve it.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Vendor and Purchaser, § 260.]

Appeal from Special Term, Onondaga County.

Action by Mary Lighton and another against the city of Syracuse. From a judgment for plaintiffs, defendant appeals. Affirmed.

In November, 1899, the plaintiffs owned a lot in the city of Syracuse at the southwest corner of East Water and Montgomery streets. On the 27th day of that month a resolution was adopted by the common council of the city directing the mayor and clerk to enter an agreement to purchase said lot for city purposes for the sum of $21,000, "free and clear of all incumbrances; $5,000 to be paid over before January 12, 1900, the title of which to be approved of by the corporation counsel, and the same to be paid for in such manner as the city is authorized by an act of the Legislature to be passed at the legislative session commencing January 1, 1900, and for that purpose the senators and members of assembly of Onondaga county are requested to procure the passage of such an act." The mayor did not approve the resolution, and it was passed over his veto. The contract was prepared in conformity to the resolution, executed by the plaintiffs, and presented to the mayor and city clerk for their signatures, but in disregard of the legislative direction they refused to execute the same. In February, 1900, a peremptory writ of mandamus was applied for, requiring these officials to sign said contract, and the corporation counsel to certify that the same "was in proper form and duly authorized." Thereafter said proceeding was dismissed as to said corporation counsel, on the ground that his certificate was not essential until after the execution of the contract. The application for the peremptory writ was denied, but an alternative writ was granted against the mayor and clerk, to which a return was made by them. The issues were referred to a referee to hear, try, and determine. A report was made in favor of the relators therein, and the same was approved by the Special Term, and a peremptory writ issued, requiring the then mayor and city clerk to execute the agreement, which they did. Upon the refusal of the city to carry out the agreement, this action was commenced to compel specific performance of the agreement. No appeal was ever taken from the judgment in the mandamus proceeding.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Walter W. Magee, for appellant.
James E. Newell, for respondents.

SPRING, J.   The judgment in the mandamus proceeding conclusively determined between the parties all the issues involved in it. People ex rel. McCabe v. Matthies, 179 N. Y. 242–248, 72 N. E. 103; Culross v. Gibbons et al., 130 N. Y. 447, 29 N. E. 839.   The mayor (section 47, c. 182, p. 379, Laws 1898; sections 33–40, tit. 5, c. 26, pp. 40, 41, Laws 1885) and city clerk were the executive officers charged with the duty of executing said agreement on behalf of the city of Syracuse by the resolution of the common council, and the judgment against them is binding also upon the city.   Ashton v. City of Rochester, 133 N. Y. 187–193 et seq., 197, 30 N. E. 965, 31 N. E. 334, 28 Am. St. Rep. 619.   It may be useful, therefore, to state briefly just what was decided in the mandamus proceeding.   The defendants in their return to the writ alleged that the price agreed to be paid for the premises was grossly excessive, and that in fact they were not worth to exceed $12,000, and also that the members of the common council in authorizing and directing the purchase of said premises acted in bad faith, and were guilty of "a legal and also an actual fraud upon the city of Syracuse, its citizens and taxpayers."   After a lengthy trial, the referee found against the defendants, and specifically that the premises were worth the purchase price set out in the agreement, and that there was no taint of fraud or collusion in the adoption of said resolution by the common council or in the making of said agreement, but all parties acted in good faith in the entire transaction.   The referee further found as a fact that the contract executed by the plaintiffs "was in proper form and duly executed" by them, and as matter of law they were entitled to a peremptory writ of mandamus, directing the mayor and city clerk "to forthwith sign and execute said contract, and affix the seal of said city to the same."   The Special Term, in its order bearing date April 25, 1903, preliminary to the issuance of the peremptory writ, distinctly confirmed all the findings of fact and conclusions of law of said referee adverted to.

The question of the binding effect of this judgment is now academic to a large degree, for upon the trial in the pending action the defendant again presented its proof on these various issues, and the trial court explicitly "found and confirmed all the findings of said referee," which were adopted in the final order and the judgment in the mandamus proceeding.   There have, therefore, been two trials on the questions connected with the execution and carrying out of this agreement, and in each the plaintiffs have been successful.

Substantially the only question now up for consideration is the effect of the refusal of the corporation counsel of the city to approve of the abstract of title tendered on behalf of the vendors.   We must consider this aspect of the case in the light of the adjudication and of the findings of fact alluded to, establishing that the contract is in proper form, represents an honest transaction, and the premises are worth the price stipulated to be paid therefor; and that in obedience to the judgment of the court the contract has been properly executed on behalf of the defendant.   The issue is a narrow one, and should be construed in

favor of an enforcement of the agreement, if the rights of the parties can be fully subserved by so doing.

Shortly after the adoption of the resolution by the common council directing the purchase of the land, the contract as executed by the plaintiffs was tendered to the mayor and the city clerk for their signatures, which were refused, and the corporation counsel was asked to certify that the same was in proper form and duly authorized, which he also declined to do. The mandamus proceeding was then commenced, and ended in the judgment July 6, 1903, and the peremptory writ was granted November 7th, and the contract was signed by the mayor and clerk the 10th of that month. A verified claim was thereupon presented to the comptroller and treasurer of the city for the purchase price of the land, but payment was refused. The Special Term, as noted, dismissed the proceeding against the corporation counsel, on the ground that his certificate should not be indorsed until after the execution of the contract by the mayor and clerk. During the pendency of the mandamus contest, it was futile to request the corporation counsel to approve the agreement, for the transaction itself was involved in that controversy. Within 10 days after the granting of the peremptory writ this action was commenced. The complaint does not allege specifically that the corporation counsel was asked to certify that the title of the premises was marketable, or that they were free from incumbrance. The answer does not allege the failure to do so, and there is no direct proof on the subject relating to a time prior to the commencement of the action, except the demand referred to, made anterior to the mandamus proceeding. The evidence shows that at the time of the execution of the contract by the plaintiffs, and also at the time of the commencement of the action, they were the absolute owners of the premises, with an indefeasible title, but subject to mortgage and tax liens. In December, 1903, they tendered to the mayor and city clerk a good and sufficient conveyance of said premises, demanding payment of the purchase price, with interest, and offered to have the amounts of all the liens set out on the certified abstract of title deducted from the purchase price, but the officials named declined to pay said purchase price. On the 24th day of February, 1904, the plaintiffs, by their attorney, attended a session of the common council, and again tendered a good and sufficient deed of said premises, at the same time presenting an abstract of title, certified by the clerk of Onondaga county, showing in the plaintiffs a good and marketable title, free and clear of lien or incumbrance, except those for which satisfactions were also tendered, ready to be delivered upon the payment of the purchase price, which they then demanded in compliance with said contract. At the same time a like presentation and tender with a similar demand were made to the mayor and other officials, each of whom refused to respond. Simultaneously the plaintiffs requested the corporation counsel to approve said abstract of title, which he declined to do. There is a conflict in the evidence over what occurred at this time, but the corporation counsel, in justification of his refusal, testified as follows:

"I asked him if the search showed these mortgages and tax liens undischarged, and he said it did. We figured about what the amount would be. I stated to him then that there was substantially $19,000 or more of undis-

charged liens on the abstract of title and search. He said that was so. Then I stated to him that the city had absolutely no need of that property, and in my judgment it was not worth to exceed half the contract price. That I was fully convinced from what I knew about the matter that the whole deal was corrupt, and I said so far as I was concerned that I deemed it my duty not to approve any abstract of title and search unless it complied with the conditions of the contract. That it was not any good for me to examine the search with his statement that undischarged liens appeared thereon. I said there might be other reasons why I would not approve of the abstract of title and search, and I would not approve it with those undischarged mortgages and taxes on it; I would not approve it unless it complied with the terms and conditions of the contract."

Among the liens appearing upon said search was a mortgage held by the Cortland Savings Bank. After the refusal of the officials of the defendant to carry out said contract, an action to foreclose said mortgage was commenced, terminating in a judgment and sale, at which the mortgagee bid off the said premises, obtaining a referee's deed, which was recorded April 21, 1904. On the 24th of June thereafter the said plaintiffs tendered to all said officials of the defendant a deed of conveyance in proper form, executed by said savings bank to said city, and accompanied such tender with a deed of the plaintiffs, containing full covenants of warranty, also naming said city as grantee, together with a search duly certified by the clerk of said county, disclosing said premises free and clear of lien or incumbrance; but said officials again refused to pay said purchase price or perform said contract. A similar tender was made later, and also upon the trial of the action, but with a like refusal.

The trial court finds specifically on each of these endeavors of the plaintiffs to induce the defendant to perform its agreement, and we will quote only from the one pertaining to the last attempt:

"That upon the trial of this action plaintiffs duly tendered to said defendant a good and perfect title of said premises, and tendered said two deeds, said Exhibits 13 and 14, and also said search, duly certified by the clerk of Onondaga county, which shows said premises free and clear from all liens and incumbrances, and being Exhibit 2 in evidence, and demanded the contract purchase price, all of which were refused by said defendant; and its corporation counsel then and there unreasonably refused to approve of said title or approve of said search, and that the said title so tendered by plaintiffs to defendant upon the trial was a good and perfect title, free and clear from all liens, and in all things conformed with the terms and conditions of said contract of purchase and with the conditions of the said resolution of said common council directing the purchase of the same."

On the 20th of June, 1904, the common council of the defendant, in response to a communication from the corporation counsel, passed a resolution rescinding the preceding resolution authorizing said contract, and declaring the same to be inoperative and void. A history of the transaction from its inception denotes that there was much opposition on the part of some of the officials of the defendant to the performance of this agreement, and that opposition culminated in the action just referred to. The conclusion also seems reasonably well founded that the corporation counsel participated in this opposition, and his reason for declining to pass upon the search or assent to the sufficiency of the title was apparently due more to this sentiment than to any apprehension that the city would not become the unqualified owner of the premises free of lien or incumbrance.

We think the certificate of approval of the corporation counsel was not an essential prerequisite to the enforcement of the agreement. The object of the precautionary clause that he inspect and pass upon the search was to insure the city an indefeasible title to the premises cleared from incumbrance. If he declined to act, and the city is unquestionably assured of the ownership of the premises without lien, as stipulated in the agreement, the purpose to be attained by his certificate has been accomplished. As was said in Amer. & Eng. Ency. of Law, vol. 26, p. 689 (2d Ed.):

"Statutory prescriptions in regard to the time, form, and mode of proceeding by public functionaries are generally directory, as they are not of the essence of the thing to be done, but are given simply with a view to secure system, uniformity, and dispatch in the conduct of public business."

As suggested in the opinion of the learned trial justice, the principle is akin to that which enables a contractor to recover on a building contract without the certificate of the architect required in the agreement, providing a reasonable excuse for the omission of the certificate and substantial performance are shown.

The plaintiffs presented a clean abstract of title upon the trial and during the pendency of the action, and were therefore entitled to judgment decreeing specific performance. Baldwin v. Slater, 8 Paige, 473; Nicklas v. Keller, 9 App. Div. 216, 41 N. Y. Supp. 172; Jenkins v. Fahey, 73 N. Y. 355; Onderdonk v. Ackerman, 62 How. Prac. 318–321. As was said in the case first cited, at page 473:

"It is a general rule that a specific performance of an agreement may be decreed if the complainant is in a situation to perform on his part, and make a good title when the cause comes before a court for a decree."

The objection urged that the plaintiffs' lot is not of the full width described in the contract and deed has been fully met in the opinion of the court below, and we deem any further discussion of that question unnecessary.

The city may not now "need" these premises, as contended by the corporation counsel in declining to pass upon the abstract of title. Its common council by formal resolution authorized the execution of the contract of purchase. The fairness of the transaction has been vindicated by a judgment from which no appeal has been taken. The contract has been duly executed on behalf of the city. Upon the present trial, after careful consideration, its validity and integrity are unimpeached, and the price which the city is to pay for the land is again determined to be reasonable, and not in excess of its value. The city should not, therefore, be excused from performance for any trivial reason.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur; KRUSE, J., in result.