# HENNA ET AL.

*v.*

# CABRERA ET AL.

---

San Juan, Equity, No. 1060.

RECEIVERSHIP ON PARTITION.

Equity Practice—Receivership.
> 1. A receiver is in charge as representing the court, and is bound to treat all parties with equal courtesy under pain of discharge. The court will not assume that he will not do his duty.

Equity Practice—Joint Receivers.
> 2. The court will not appoint more than one receiver unless under exceptional circumstances. As a rule it is better to have one head to the business.

Equity Practice—Ignorance of English.
> 3. As a rule the court will not appoint a receiver who is ignorant of the official language of the court, although circumstances may compel this in particular cases.

### Henna v. Cabrera.

**Equity Jurisdiction—Partition.**

4. The equity jurisdiction to partition property carries with it, under local procedure, if not by the rules of equity, the right to sell a portion of the property.

**Equity Practice—Life Tenant.**

5. A life tenant may bring a suit for partition, provided all parties in interest are brought in.

**New Equity Rules—Cross Complaint.**

6. While the New Rules do not mention a cross bill against a co-defendant, this was the former practice, and will be construed to continue.

Opinion filed July 13, 1920.

---

*Messrs. J. Henri Brown* and *H. G. Molina* for plaintiffs.

*Messrs. F. H. Dexter* and *J. A. Poventud* for defendants.

HAMILTON, Judge, delivered the following opinion:

The facts in this case seem to be that certain thirty-seven pieces of property known as the Central Boca Chica on the Island of Porto Rico east of Ponce are owned by the estates of two original owners, Gustavo and Enrique Cabrera. The children of Gustavo, to wit: Gustavo, William, Mary, and Maud, seem to have made a deed of a life estate to their mother, Emelia Victoria Cabrera, thus constituting her what under the Spanish law is called a usufructuary, the grantors retaining only the reversion, called *nuda propiedad*. The children of Enrique are Mary and Henry, their mother being dead. The life tenant representing the Gustavo Cabrera interest and the children representing the Enrique Cabrera half joined in

a lease February 8, 1908, to Gustavo for a term of twelve years, beginning July 1, 1908, and consequently expiring with June 30 of this year. The property at that time seems to have been the old-fashioned Muscovado factory, producing 120 tons of sugar per day. This being inadequate to modern conditions, the tenant Gustavo and the widow Emelia Victoria made a contract with the other parties in interest by which they were to put in new machinery and if it did not exceed $30,000 in value it was to be accepted and paid for by the estate. It produces 510 tons of sugar per day. In point of fact it cost a great deal more, and is now valued at $404,000. There being no understanding arrived at between the parties, Gustavo prepared to remove the machinery which he had placed and restore the property to its former condition. Whereupon Mary and Henry Cabrera filed suit in the Insular court at Ponce to enjoin this, and Jose Romaguera Roura was appointed receiver, ex parte, but did not go into possession because the lease had not yet expired.

Later the present bill was filed in the Federal court for partition, alleging that the lands could be divided, but that the mill was incapable of division and must be sold. In order to prevent further complications, this court upon application of the plaintiff and some of the defendants appointed Rafael Menendez, then chemist on the property, receiver and he went into possession of the property immediately upon the termination of the grinding of the crop, June 30. The answer of Gustavo sets up a cross complaint against Mary and Henry Cabrera, seeking to have a lien declared upon the property for the improvements placed upon it.

The case now comes on to be heard upon preliminary motions

which confess the bill except so far as they traverse it by affidavits. The motions submitted July 2 by the defendants were first to dismiss the bill for want of equity, second to dismiss the counterclaim for the same reason, and third to set aside the appointment of the receiver as improvidently made. Pending the submission defendants also made a motion for the appointment of one Jose Romaguera Roura as coreceiver. It will probably simplify matters to discuss first the questions as to receiver:

1. On the question of receivership the defendants first sought to have the receivership set aside as improperly granted, and afterwards as an alternative they asked the appointment of Romaguera as coreceiver to represent their interest. This brings up the general question of receiverships.

It is an error to think of a receiver as representing either side. The object of a receivership has been the same since the time of the Roman sequestratio, that is to say, for the court through officers or a disinterested person to take charge of property in litigation and after the adjustment of questions involved to turn it over to the party shown to have the better right. The case at bar seeks sale and distribution of proceeds, which is the same in principle. The receiver will do what is necessary and turn over the proceeds as may be directed by the court. The motion to appoint a coreceiver will not be granted. It would be in effect an admission by the court that it had appointed a receiver who was favorable to one side rather than the other. It is true that the man appointed receiver worked in connection with the lessee of the property, one of the parties hereto; but the lease in question has now terminated, and the receiver is not acting under or in connection with that at all.

It is true the court had little opportunity to examine into his qualifications before appointing him, but that is a misfortune connected with receiverships, which generally require prompt action. On inquiry since, and upon full consideration of all affidavits in the case, the court is satisfied that no error was committed. The receiver seems to be going about his business in a systematic manner, and no evidence of partiality has been adduced. The affidavits of defendants fear that there will be such, and the court can only say now what it said upon another occasion, that if there is proof of anything of the kind the receiver will be discharged at once. He is in charge as representing the court, and is bound to treat all parties with equal courtesy. He has been so instructed and the court will not assume that he will not carry out the instructions. The motion to set aside the receivership is therefore denied.

2. The man appointed receiver therefore being suitable, there would seem to be no reason for adding another receiver. In any business it is better to have one head unless there are some special circumstances, as occurred with the Gas Company, where the bondholders bringing the suit lived in the States while the franchise was exercised here, and in the case of the Progreso Central, which needed an active manager and also some one to look after the financial part of the business. In the case at bar there seems to be no such special reason. In point of fact, if the partition and sale prayed for are granted, the receiver would have little to do except take care of the plant during the dead season and see to proper cultivation of cane for a few months. The motion to appoint a coreceiver is therefore denied.

3. Even if it were otherwise, the court would not feel au-

XII. Porto Rico.—2.

Henna v. Cabrera.

thorized to appoint Mr. Romaguera because of his ignorance
of English. The court will not go so far as to say that a
Spaniard or anyone else not understanding English will never
be appointed receiver. Circumstances might readily arise, and
did arise in the Progreso Case, where it would be inappropriate
to have a receiver who spoke only English, and where it might
even be necessary to have one who was acquainted only with
Spanish. The language generally spoken in Porto Rico is
Spanish, and officers like receivers carrying on business would
almost from the necessity of the case have to know that language.
On the other hand the proceedings of this court are by law
required to be in English, and it would be an anomaly for a
court to appoint an official with whom it could not communicate
in the official language of the court.

4. It is sought to secure the dismissal of the bill because it
is without equity. Without discussing the bill in detail at
this time, it would suffice to say that it seems to seek partition
of the lands and sale of the Central for partition. Equity has
jurisdiction to enforce partition and that would carry with it,
under the local procedure if not by the general rules of equity,
the right to sell at least a portion of the property. Klever v.
Seawall, 12 C. C. A. 661, 22 U. S. App. 715, 65 Fed. 393; P.
R. Civ. Code, §§ 407, 1020, 1029.

One ground of the motion to dismiss the bill is that it is
brought by a life tenant, the widow Cabrera, known under the
Spanish law as usufructuary. It is contended that a life tenant
cannot bring a suit for partition. Under the general equity
practice in the States this can be done. A tenant for life
may bring proceedings for partition provided he bring in re-
maindermen, reversioners, and all parties having any interest

in the premises. Fitts v. Craddock, 144 Ala. 437, 113 Am. St. Rep. 53, 39 So. 506; Jenkins v. Fahey, 73 N. Y. 355. The same procedure is followed in Louisiana. Miguez v. Delahoussaye, 25 La. Ann. 531; Barney v. Baltimore, 6 Wall. 280, 18 L. ed. 825; 38 Century Dig. Partition, § 137. At common law ownership is regarded more as an entity than in the civil law. It is regarded as an artificial unity, an estate, which can be carved up into different interests, but which taken all together remain a unity. The court has been given no Porto Rican citation under which a life tenant has the right to seek partition, but following equity principles there seems to be, no reason why this cannot be done, provided all parties in interest are in court. Otherwise a court of equity in a civil-law state would be shorn of the powers which it has in a common-law state. It cannot be held that the powers of a court of equity are any less in the one case than the other.

5. The motion is also made to dismiss the cross complaint. The cross claim is brought under new Equity Rule No. 30. This rule does not seem to be as definite as it might have been. It is, ". . . The answer must state in short and simple form any counterclaim arising out of the transaction which is the subject-matter of the suit, and may, without cross bill, set out any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him, and such set-off or counterclaim, so set up, shall have the same effect as a cross suit, so as to enable the court to pronounce a final judgment in the same suit both on the original and cross claims."

Its terms therefore do not speak of a counterclaim against any one except the plaintiff; nevertheless Rule 31 provides

that "if the counterclaim is one which affects the rights of other defendants they or their solicitors shall be served with a copy of the same within ten days from the filing thereof, and ten days shall be accorded to such defendants for filing a reply." This would be anomalous if such averment in the answer is not to be considered as in the nature of a counterclaim against the other defendants so affected.    Montgomery, Manual of Fed. Proc. 2d ed. 422.

6. The new Equity Rules are directed to the simplification of procedure, not to the omission of any rights previously existing. Previous to these rules one could by cross bill against a codefendant seek affirmative relief grounded upon the case presented by the original bill.   This was done under the general principle of a multiplicity of suits.   Symmes v. Strong, 28 N. J. Eq. 131. There is no reason to suppose that the new rules were meant to change the principle involved in this practice, the object being to substitute a more informal procedure by counterclaim and answer for cross bill.   The motion to dismiss is therefore denied.

It is so ordered.